**E<small>XHIBIT</small> A**
**(T<small>AX</small> A<small>LLOCATION</small> A<small>GREEMENT</small>)**

Case 1:16-cv-02475-REB   Document 10-1   Filed 12/21/16   USDC Colorado   Page 2 of 7

**A041**

Case:14-01191-TBM   Doc#:17-2   Filed:07/22/14   Entered:07/22/14 10:24:38   Page3 of 8
Case:12-13815-ABC   Doc#:199-1   Filed:11/09/12   Entered:11/09/12 16:46:33   Page2 of 7

## TAX ALLOCATION AGREEMENT

This Agreement (the "Agreement") dated as of January 1, 2008, by and among United Western Bancorp, Inc. ("UWBI"), a Colorado corporation and unitary thrift holding company, United Western Bank, a federal savings bank, Matrix Financial Services Corporation, an Arizona corporation, Matrix Insurance Services Corporation, an Arizona corporation, Matrix Bancorp Trading, Inc., a Colorado corporation, First Matrix Investment Services Corp., a Texas corporation, Matrix Funding Corp., a Colorado corporation, UW Asset Corp., a Colorado corporation, UWBK Fund Management, Inc., a Colorado corporation, The Vintage Group, Inc., a Texas corporation, Vintage Delaware Holdings, Inc., a Delaware corporation, Sterling Trust Company, a Texas nonbank trust company, MSCS Ventures, Inc., a Colorado corporation, Equi-Mor Holdings, Inc., a Nevada corporation, are hereinafter sometimes collectively referred to as the "Affiliates", provides as follows:

WHEREAS, the Affiliates are members of an affiliated group (the "Group") within the meaning of Section 1504(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and have filed in the past and will file a consolidated federal income tax return for the tax years 2004 and thereafter; and

WHEREAS, UWBI and the Affiliates desire to establish a method for (i) allocating the consolidated tax liability of the Group among its members, (ii) reimbursing UWBI for the payment of such tax liability, and (iii) compensating each member of the Group for the use of its losses by any other member of the Group;

NOW, THEREFORE, UWBI and the Affiliates agree as follows:

A. General Rule – Federal
   1. Except as specifically set forth herein to the contrary, each Affiliate shall pay UWBI an amount equal to the federal income tax liability such Affiliate would have incurred were it to file a separate return (or, if appropriate, a consolidated return with its subsidiary affiliates). If a regulated first-tier Affiliate incurs a net operating loss or excess tax credits, the regulated Affiliate is entitled to a refund equal to the amount that it would have been entitled to receive had it not joined in the filing of a consolidated return with UWBI. Similar treatment is optional at UWBI discretion for nonregulated first-tier Affiliates. Any refund shall generally not exceed the amount claimed or received as a refund resulting from a carryback claim filed by UWBI. However, this shall not prevent UWBI from the ability to make a refund over the amount received or claimed as a refund or carryback, if in its sole discretion it believes such payment is in its best interest. Additionally, if part of all of an unused consolidated net operating loss, net capital loss, tax credit or similar type item is allocated to an Affiliate pursuant to Regulations Section 1.1502-21, and it is carried back, if utilized, or it is carried forward, whether or not utilized, to a year in which such Affiliate filed a separate income tax return or a consolidated federal income tax return with another group, any refund or reduction in tax liability arising from the carryback or carryforward shall be retained by such Affiliate and such item shall not enter into the calculation of liability to or from UWBI.

   2. In essence, this Agreement requires that each first-tier subsidiary be treated as a separate taxpayer with UWBI merely being an intermediary between an Affiliate and the Internal Revenue Service ("IRS").

B. General Rule – State
   1. This Agreement covers settlements with Affiliates for state income taxes and franchise taxes based on income for all states in which combined returns are filed.

Case 1:16-cv-02475-REB  Document 10-1  Filed 12/21/16  USDC Colorado  Page 3 of 7

A042

Case:14-01191-TBM  Doc#:17-2  Filed:07/22/14  Entered:07/22/14 10:24:38  Page4 of 8
Case:12-13815-ABC  Doc#:199-1  Filed:11/09/12  Entered:11/09/12 16:46:33  Page3 of 7

2. Each first-tier Affiliate is required to pay UWBI an amount equal to the state income tax liability such Affiliate would have incurred if it filed a separate return (or, if appropriate, a combined return with its subsidiary affiliates).

3. This Agreement treats each first-tier Affiliate as a separate taxpayer, with UWBI serving as an intermediary between the Affiliate and the applicable state taxing authority. Only Affiliates with sufficient nexus, which would have required filings in the respective states will be included in the settlement.

C. Specific Policies

Set forth below are specific policies designed to cover certain factual scenarios:

1. Charitable contributions: Unless charitable contributions made by an Affiliate, including carryovers, can be utilized by the Affiliate on its separate company return, UWBI will not reimburse the Affiliate for the related tax benefit of the contribution deduction.

2. Dividends received deduction: The limitations on the dividends received deduction will be applied on a separate company basis.

3. Capital gains and losses: Several scenarios may arise affecting UWBI's general tax settlement policy. The problem is further compounded as the organization has both bank and nonbank affiliates, and different tax rules may be applicable. Although the capital gains and the ordinary income tax rates are currently the same, capital loss limitation rules continue to apply. Policies relating to capital gains and losses are set forth as follows:

   a) An Affiliate shall be reimbursed for capital losses only to the extent it can utilize such losses on a separate company basis taking into account the capital loss carryover and carryback rules. For example, if an Affiliate with no capital gain income in the past three years incurs a capital loss, it will receive a tax benefit in the year it generates sufficient capital gain income. (Note: for capital losses there is a 5-year carryover period and 3-year carryback period.) The reimbursement rate shall be the maximum capital gain tax rate imposed in the year such losses are utilized on a separate company basis. The minimum tax implications shall be taken into account in determining the actual amount of the separate company benefit.

   b) An Affiliate having capital gain net income in a year in which it incurs a net operating loss shall be reimbursed as though the capital gain is ordinary income.

   c) An Affiliate is entitled to the benefit of capital gain treatment only if the alternative tax computation results in a lower tax computed on a separate company basis.

4. Alternative minimum tax: For tax settlement purposes only, the alternative minimum tax ("AMT") shall be imposed on an affiliate-by-affiliate basis without regard to the consolidated AMT position. Any AMT imposed general shall be treated as an AMT credit carryover and can be used by an Affiliate to offset its future regular tax, but not below its AMT in the future year.

5. Benefits attributable only to UWBI: The Code contains several provisions to limit an affiliated group of corporations to only one exclusion or benefit. Except for Affiliates that are insured depository institutions (which shall never be liable for payments to UWBI under this Agreement in excess of what their tax liability would be computed on a separate-entity basis), where such

Case 1:16-cv-02475-REB   Document 10-1   Filed 12/21/16   USDC Colorado   Page 4 of 7

A043

Case:14-01191-TBM   Doc#:17-2   Filed:07/22/14   Entered:07/22/14 10:24:38   Page5 of 8
Case:12-13815-ABC   Doc#:199-1   Filed:11/09/12   Entered:11/09/12 16:46:33   Page4 of 7

provisions apply, the entire exclusion or benefit shall be attributed to UWBI in determining tax settlement.

The more common exclusions or benefits include, but are not limited to, the following:

   a) Corporate tax brackets: The benefits, if any, of the reduced tax rates attributable to the lower brackets of taxable income belong to UWBI. Thus, tax payments due to, and refunds to be received from, UWBI will be computed at the applicable maximum tax rate.

   b) Alternative minimum tax exemptions: The $40,000 AMT exemption will be ignored. Thus, an Affiliate may not reduce its alternative minimum taxable income by any portion of the exemption.

6. Inter-company transactions: The tax consequences (i.e. the recognition of gains and losses, bad debt deductions or charge-offs, investment tax credit recapture, etc.) of inter-company transactions shall not be recognized for tax settlement purposes unless and until such consequences can be recognized on UWBI's consolidated return as provided in the appropriate income tax regulations.

7. Separate return limitation year tax benefit: From time to time, Affiliates acquire other companies and in the process, the Affiliates may be entitled to certain tax benefits (i.e. net operating losses, tax credits, etc.) previously generated by the acquired companies. UWBI shall not reimburse Affiliates for these acquired tax benefits until such time as these benefits are utilizable by the acquiring company on a separate return basis.

D. Specific Policies – State
Set forth below are specific policies designed to cover all state settlements:

1. Federal settlement taxable income shall be the starting point for computing state taxable income.

2. State taxable income for each affiliate shall be computed using the same factors and methods used on the combined return actually filed by UWBI and Affiliates.

3. Regulated first-tier Affiliates shall receive the benefit for any individual state credits or net operating losses (NOLs) generated, providing they could have been used on a separate company basis (or mini-consolidated) under applicable state law. Similar treatment for nonregulated first-tier Affiliates is optional at UWBI's discretion.

4. Settlement calculations shall be made by UWBI no later than November 30. No interest shall be paid or charged on settlement payments.

E. Tax Settlement Payments – Federal
1. Preliminary tax settlement payments are due on or before March 15 following the end of the appropriate taxable year. Although overpayments of estimated taxes made by Affiliates are not refunded until final tax settlement is done, an Affiliate with a taxable loss for the year may recover estimated taxes paid for that year before final settlement if an "expedited refund" claim is filed with UWBI by February 15 following the end of the tax year.

2. Each first-tier Affiliate shall compute its final tax settlement liability based on the amounts included for that Affiliate (and its subsidiaries, if applicable) in the consolidated federal income

Case 1:16-cv-02475-REB   Document 10-1   Filed 12/21/16   USDC Colorado   Page 5 of 7

A044

Case:14-01191-TBM   Doc#:17-2   Filed:07/22/14   Entered:07/22/14 10:24:38   Page6 of 8
Case:12-13815-ABC   Doc#:199-1   Filed:11/09/12   Entered:11/09/12 16:46:33   Page5 of 7

tax return filed. A copy of such computation will be prepared by October 31, and any differences will be resolved. Final tax settlement payments or refunds are due on or before November 15.

F. Tax Settlement Payments – Federal and State

1. Estimated payments of Federal and State taxes shall be made by Affiliates on designated due dates as follows:

   | 1st quarter | — | April 15 |
   | 2nd quarter | — | June 15 |
   | 3rd quarter | — | September 15 |
   | 4th quarter | — | December 15 |

2. For every designated due date, beginning on the date hereof and thereafter no later than 10 business days following the day on which UWBI gives notice to the Affiliates that payments of estimated federal and state income tax are due, but no earlier than 10 business days prior to the due date for the payment of such estimated taxes to the federal government, the Affiliates shall pay to UWBI an amount equal to the amount of any estimated federal income taxes which the Affiliate would have been required to pay on or before such dates if the Affiliate had filed its own separate income tax return for such taxable period. Such hypothetical estimated income tax liability shall be determined by UWBI by any reasonable manner consistent with the group's estimated annual or quarterly tax liability and in accordance with methods outlined in the Code and Treasury regulations, as in effect from time to time, governing the calculation of estimated income tax, including such rules regarding payment of estimated tax in taxable years of less than 12 months.

3. Payments to an Affiliate for net operating losses or similar items shall not be made under this provision, but rather on an annual basis pursuant to Section A.

G. Filing of Returns, Payment of Tax, UWBI as Agent

1. Each Affiliate hereby appoints UWBI as its agent, as long as such Affiliate is a member of the UWBI group, for the purpose of filing such consolidated Federal income tax returns for the UWBI group as UWBI may elect to file and making any election, application or taking any action in connection therewith on behalf of the Affiliates. Each such Affiliate hereby consents to the filing of any such returns and the making of any such elections and applications.

H. Miscellaneous

1. In the event of any adjustment to the tax returns of the Group as filed (by reason of an amended return, claim for refund, or an audit by a taxing authority), the liability of the parties to this Agreement shall be re-determined to give effect to any such adjustment as if it had been made as part of the original computation of tax liability, and payments between the appropriate parties shall be made within 10 business days after any such payments are made or refunds are received, or, in the case of contested proceedings, within 10 business days after a final determination of the contest.

2. This Agreement shall apply to both federal income taxes and state income taxes for those states in which a determination of tax is made on a combined basis.

Case 1:16-cv-02475-REB   Document 10-1   Filed 12/21/16   USDC Colorado   Page 6 of 7

A045

Case:14-01191-TBM   Doc#:17-2   Filed:07/22/14   Entered:07/22/14 10:24:38   Page7 of 8
Case:12-13815-ABC   Doc#:199-1   Filed:11/09/12   Entered:11/09/12 16:46:33   Page6 of 7

3. All subsidiaries of UWBI shall be subject to this Agreement. If at any time UWBI acquires or creates one or more subsidiary corporations that are includable corporations of the Group, they shall be subject to this Agreement.

4. The liability of the Affiliates as established under this Agreement shall be computed in a manner consistent with the provisions of Sect. 1.1552-1(a)(2)(ii) of the regulations of the Internal Revenue Service. The intent of this Agreement is to provide an equitable allocation of the tax liability of the Group among UWBI and the Affiliates. Any ambiguity in the interpretation hereof shall be resolved, with a view to effectuating such intent, in favor of any insured depository institution.

5. This Agreement shall be binding on and inure to the benefit of any successor, by merger, acquisition of assets or otherwise, to any of the parties hereto to the same extent as if such successor had been an original party to this Agreement.

6. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF COLORADO AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERCIA.

7. The headings, captions, and arrangements used in this Agreement are for convenience only and shall not affect the interpretation of this Agreement.

8. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

IN WITNESS WHEREOF, the undersigned have executed this Agreement by authorized officers thereof as of the date first above written.

UNITED WESTERN BANCORP, INC.

By: REDACTED
William D. Snider
Chief Financial Officer

UNITED WESTERN BANK

By: REDACTED
Scot T. Wetzel
President & Chief Executive Officer

MATRIX FINANCIAL SERVICES CORPORATION

By: REDACTED
William D. Snider, President

MATRIX INSURANCE SERVICES CORPORATION

By: REDACTED
William D. Snider, President

Case 1:16-cv-02475-REB Document 10-1 Filed 12/21/16 USDC Colorado Page 7 of 7

A046

Case:14-01191-TBM Doc#:17-2 Filed:07/22/14 Entered:07/22/14 10:24:38 Page8 of 8
Case:12-13815-ABC Doc#:199-1 Filed:11/09/12 Entered:11/09/12 16:46:33 Page7 of 7

MATRIX BANCORP TRADING, INC.

REDACTED

By_____
Michael J. McCloskey, President

MATRIX FUNDING CORP.

REDACTED

By:_____
Michael J. McCloskey, President

UWBK FUND MANAGEMENT, INC.

REDACTED

By_____
Michael J. McCloskey, President

STERLING TRUST COMPANY

REDACTED

By_____
Paul E. Skretny, President

EQUI-MOR HOLDINGS, INC.

REDACTED

By:_____
Michael J. McCloskey, President

FIRST MATRIX INVESTMENT SERVICES CORP.

REDACTED

By:_____
Benjamin C. Hirsh, President

UW ASSET CORP.

REDACTED

By:_____
Michael J. McCloskey, President

Vintage-Delaware Holdings PE
THE VINTAGE GROUP, INC.

REDACTED

By:_____
Michael J. McCloskey, President

MSCS VENTURES, INC.

REDACTED

By_____
Paul E. Skretny, President

The Vintage Group PE
VINTAGE DELAWARE HOLDINGS, INC

REDACTED

By_____
Paul E. Skretny, President

Ben,
Changed as we
discussed.

3-13-08

REDACTED